### Eva Tanguay, Appellee, v. Lew Fields, Appellant.

### Gen. No. 19,923.   (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. THOMAS F. SCULLY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed November 19, 1914.

### Statement of the Case.

Action by Eva Tanguay against Lew Fields for services rendered by her as an actress under a contract made in New York on September 4, 1912. From a judgment in favor of the plaintiff for two thousand dollars, defendant appeals.

The contract of employment admitted in evidence upon which plaintiff predicated her claim, reads as follows:

"New York, Sept. 4, 1912.

"Dear Miss Tanguay:

I hereby engage you to play the leading female part in 'The Sun Dodgers,' which is to open on or about October 1st. I agree to pay you the sum of Two Thousand Dollars ($2000) a week. I also agree to bill you in all advertisement matter, electric signs and newspapers in the following manner:

EVA TANGUAY

in

THE SUN DODGERS

Your signed acceptance to this letter will be binding.

Eva Tanguay.                          Lew Fields."

C. F. Zittel.

It was admitted that the plaintiff performed for one and one-half weeks and was paid only one-half week's salary.

Defendant contended that according to the established custom and usage in the theatrical profession,

where an actor or actress is engaged to render services for a new play, and no date is specified in the agreement, the engagement is for the season or run of the play; that the contract offered in evidence was of that character, and that the established custom and usage must be considered a part of the contract; and that consequently plaintiff's engagement was for the theatrical season of 1912-1913, or for the run of the play.

It was admitted by plaintiff that she left the company that was presenting the play one and one-half weeks after it opened. Defendant contended that she left without his consent and over his protest; that the engagement having been for the entire season or run of the play, plaintiff committed a breach of her contract and was therefore not entitled to recover; and furthermore, that by reason of the breach by plaintiff of her contract, defendant was damaged in a sum greater than the amount claimed by the plaintiff.

Plaintiff maintained that before the play opened she had notified defendant that she was dissatisfied with her part and would leave the company, and that defendant made no objection and consented to her doing so; further, that in leaving the company when she did, she did not breach her contract, but had a right to do so; and having rendered services for one week, she was entitled to payment therefor.

Plaintiff denied that there was an established custom and usage in the theatrical profession, with reference to the contract in question, as contended for by defendant.

To support his contention as to the alleged custom and usage, defendant testified that he had been a theatrical manager for many years; that he had made many contracts of this kind, not only with plaintiff but with other well-known actors and actresses; that there was a custom in the theatrical business in the city of New York, where this contract was made, and else-

where throughout, the United States, that where an actor or actress engages to render services in a new play, and no time is specified in the agreement, the actor is supposed to play for the entire season or run of the play; that the custom is long established and as well known among actors and artists engaged to perform as among managers and producers.

Frank C. Langley, witness on behalf of the defendant, testified that he had been engaged in the theatrical business for many years, and corroborated defendant as to the existence of the custom as contended for by defendant.

Plaintiff testified that she had been an actress for nearly twenty-five years; that she was familiar with the established custom and usage pertaining to the theatrical business; that there was no well-established custom and usage whereby a contract of this kind was binding on the parties for the whole season or run of the play.

Arthur Klein, also called by the plaintiff, testified that he was a theatrical manager and that he was acquainted with the methods and customs prevailing in the theatrical business; that there was no well-established custom whereby the period of service in the contract offered in evidence would be construed as extending over the entire season or run of the play.

Another witness for the plaintiff was Lew Krause, who testified that he was familiar with the theatrical business in general, and that there was absolutely no custom whereby the contract in question would be considered as covering the theatrical season of the year in which the contract was made, or for the run of the play.

Frank & Lurie, for appellant.

Adolph Marks, for appellee.

Mr. Justice Pam delivered the opinion of the court.

## Abstract of the Decision.

1. CUSTOMS AND USAGES, § 24*—*burden of proving existence of a custom.* When a defendant relies on a failure to comply with an alleged established custom or usage as part of a contract of employment of an actress, the burden is upon him to prove the existence of such custom or usage.

2. CUSTOMS AND USAGES, § 27*—*when evidence insufficient to establish custom in theatrical profession.* Where defendant contended that according to an established custom or usage in the theatrical profession, where an actress is engaged to render services for a new play and no date is specified in the agreement, the engagement is 'for the season or the run of the play, in an action for services rendered, the evidence is *held* to fail to show the existence of such a custom or usage.